District Court Of Appeal Of The State Of Florida
Fourth District

**TRACEY ANN RENAY STURRIDGE,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D2025-1788

[May 20, 2026]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Lawrence Michael Mirman, Judge; L.T. Case No. 562023CF002577AXXXXX.

Antony P. Ryan, Director, and Paul O'Neil, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, West Palm Beach, for appellant.

James Uthmeier, Attorney General, Tallahassee, and Lindsay Ayn Warner, Senior Assistant Attorney General, West Palm Beach, for appellee.

Shaw, J.

This appeal follows the defendant's convictions at trial of one count of robbery with a firearm while masked and one count of battery. On appeal, the defendant claims the circuit court erred by: (1) denying the defendant's motion for continuance; (2) denying the defendant's motion for severance; (3) implementing a dual-jury procedure; and (4) admitting collateral-crime evidence. We affirm on all issues. We write to discuss only the circuit court's use of a dual-jury procedure.

## I. BACKGROUND

The State presented the following evidence at trial.

On September 18, 2023, a woman walked into a convenience store wearing a medical face mask and hat. When the woman attempted to purchase an item, she grabbed cash from the register before trying to run out of the store.

Simultaneously, a customer entered and blocked the woman from leaving the store. The customer and the woman engaged in a physical struggle. The woman's face mask and hat fell off during the struggle. The woman bit the customer on his back and hand, then pulled out a firearm and hit him on the head with it. The customer eventually disarmed the woman and handed the firearm to the shift supervisor who called 911. He held onto the woman so she could not leave.

A white Audi SUV with a broken rear window then pulled in front of the store. A male driver exited the car and stood by the driver's door. The customer was worried that the driver also had a firearm, so the customer released the woman. The woman ran into the Audi and the two fled.

When the police arrived at the convenience store, they interviewed the shift supervisor and customer. The police also reviewed the store's security footage. The police noted the woman's appearance and the getaway vehicle. The police collected the face mask and hat for DNA evidence. The police also swabbed the bite marks on the customer for DNA evidence.

A few hours later, the police located the getaway vehicle registered to the defendant. The police gathered more evidence inside the vehicle, including the defendant's driver's license.

Two days later, the police responded to a 911 call placed by a motel employee. The employee believed someone was in an unpaid room. Inside the room, the police found the defendant and her husband. They arrested the pair.

At the police department, a sergeant interviewed the defendant and the husband separately. The husband made incriminatory statements about the defendant during his interview such as:

> I can't tell you about no robbery. I just went to pick up my wife. There was no robbery. She wasn't fighting anybody.
>
> …
>
> She wasn't struggling with anybody. When I pulled up, she's – I'm on the phone with her. She's coming to the car. She's coming to the car when I pulled up.

2

The State charged the defendant by amended information with two counts: robbery with firearm while masked (Count 1); and aggravated battery (Count 2). The State charged the husband by amended information with two counts: accessory after the fact (Count 3); and robbery with firearm (Count 4).

Before trial, the defendant filed a motion to sever her trial from that of her husband under Florida Rule of Criminal Procedure 3.152(b)(1)(A) and *Bruton v. United States*, 391 U.S. 123 (1968). The defendant argued her trial defense would be mistaken identity, yet the husband had made incriminating and prejudicial statements implicating the defendant.

The circuit court held a pretrial hearing on the defendant's motion to sever. While the State agreed that the husband's statements should not be used against the defendant, the State argued that trying the case twice would create a massive duplicative effort because the evidence presented would be the same for each jury except for the husband's statements. The State proposed picking two separate juries and excluding the defendant's jury from the courtroom when needed. Ultimately, the circuit court adopted this procedure.

At trial, two separate juries were used. During voir dire, the jurors confirmed they could be fair and impartial based on the co-defendants' marital status. Both juries heard the same opening statements and most of the same testimony. However, the juries were separated for portions of the sergeant's testimony, as well as portions of the testimony of a police officer who had conducted a traffic stop on the Audi several days before the armed robbery. Additionally, the juries were separated for closing arguments, jury instructions, and the jury verdict.

Following deliberations, the jury found the defendant guilty of robbery with a firearm while masked and simple battery. The defendant was sentenced to 25 years' imprisonment, with a ten-year minimum mandatory term of imprisonment, for her armed robbery conviction and a one-year term of imprisonment for her battery conviction. This appeal followed.

## II. STANDARD OF REVIEW

We review under the abuse of discretion standard. "The procedural conduct of trials is within the trial court's broad discretion, and using a dual jury procedure is part of that discretion." *Minor v. State*, 763 So. 2d 1169, 1170 (Fla. 4th DCA 2000).

3

## III. DISCUSSION

The parties do not dispute that a *Bruton* problem existed in this case. However, the parties dispute the fairness of the method used by the circuit court to solve this problem. The defendant contends that having one trial with much of the same evidence presented to both juries was not the "separate" trial mandated by Florida Rule of Criminal Procedure 3.152(b). That rule pertinently provides:

> If a defendant moves for a severance of defendants on the ground that an oral or written statement of a codefendant makes reference to him or her but is not admissible against him or her, the court shall determine whether the state will offer evidence of the statement at the trial. If the state intends to offer the statement in evidence, the court shall order the state to submit its evidence of the statement for consideration by the court and counsel for defendants and if the court determines that the statement is not admissible against the moving defendant, it shall require the state to elect 1 of the following courses:
>
> …
>
> (C) severance of the moving defendant.

We disagree with the defendant's argument. The use of a dual-jury procedure is an appropriate way to deal with a *Bruton* issue. "Florida law allows for multiple juries as a useful exercise in judicial economy." *Estevez v. State*, 127 So. 3d 635, 641 (Fla. 4th DCA 2013) (internal quotation omitted). "The multiple jury procedure was designed to avoid *Bruton* problems and other general problems of prejudice that arise from joint trials." *Velez v. State*, 596 So. 2d 1197, 1199 (Fla. 3d DCA 1992) (citation omitted). Indeed, in one of the cases relied upon by the defendant, *Heinly v. State*, 201 So. 3d 769 (Fla. 4th DCA 2016), we noted, "[C]ourts are allowed to use multiple juries as a tool for furthering judicial economy." *Id.* at 774.

Of course, in implementing a dual-jury procedure, "a trial judge must take great care to insure (*sic*) that each jury hears evidence relevant only to its defendant." *Id.* (quoting *Watson v. State*, 633 So. 2d 525, 525 (Fla. 2d DCA 1994)). Reversible error can arise when a jury hears evidence it should not have heard. *See id.* at 775 (reversing conviction where, in the presence of both juries, new evidence elicited on cross-examination negatively impacted the credibility of that witness, upon whom the

4

defendant was relying for his defense); *Estevez*, 127 So. 3d at 643 (reversing conviction where circuit court allowed a co-defendant to testify in the presence of both juries that the defendant had committed crimes for which he had been previously acquitted); *Watson*, 633 So. 2d at 525 (reversing conviction where both juries remained in the courtroom during testimony that exculpated the co-defendant and inculpated the defendant).

That type of error did not occur here. Instead, the circuit court ensured that each jury heard evidence relevant only to their assigned defendant, and excluded the defendant's jury from the courtroom when needed to avoid a *Bruton* problem. *See Velez*, 596 So. 2d at 1199.

The defendant points to only one "highly prejudicial" statement that both juries heard during the trial. During the co-defendant husband's cross-examination of a detective, the detective testified that the husband had said the defendant was his wife. The co-defendants' marital status was not a feature of the evidence presented by any party during trial. We are not persuaded this statement was prejudicial, let alone highly prejudicial.

## IV. CONCLUSION

In sum, the circuit court did not abuse its discretion by implementing the dual-jury procedure. On that issue and all other issues raised, we affirm the defendant's convictions and sentences.

*Affirmed.*

KUNTZ, C.J., and LEVINE, J., concur.

*     *     *

***Not final until disposition of timely-filed motion for rehearing.***